Daniel C. Sharpe, Esq. (SBN 267075)
**WINDSOR TROY**
3701 Wilshire Boulevard, Suite 1111
Los Angeles, California 90010
Phone: (323) 800-5405
Facsimile: (323) 800-5406
Email: @wtroy.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA CERVANTES, an Individual<br><br>PLAINTIFF<br><br>v.<br><br>COUNTY OF LOS ANGELES, by and through the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DEPUTY STEPHEN SAENZ; DEPUTY JOHANA ESCALANTE; DEPUTY VANESSA GUZMAN; DEPUTY STAVROS VITOGIANNIS; DOES 4-25, inclusive<br><br>DEFENDANTS | Case No.: 2:22-CV-07764-FMO (AGRx)<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Search & Seizure<br>2. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Arrest<br>3. Deprivation of Civil Rights, 42 U.S.C. §§ 1981, 1983 – 14th Amendment Racial Discrimination<br>4. Deprivation of Civil Rights, 42 U.S.C. § 1983 – *Monell* Liability<br>5. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Search & Seizure<br>6. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Arrest<br>7. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Racial Discrimination/Racial Profiling |

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil rights lawsuit filed by Plaintiff Alma Cervantes against members of the Los Angeles County Sheriff's Department for the unconstitutional actions committed against her in contravention of her Fourth, and Fourteenth Amendments to the United States Constitution and California law.

2.      Jurisdiction for such claims is conferred upon the Superior Court for the State of California in and for the County of Los Angeles, as Plaintiff asserts claims herein that are derived from the statutes and common law recognized under the laws of California and the United States, the events that give rise to litigation occurred in and around the County of Los Angeles, and the claims asserted herein warrant damages in excess of $25,000.00.

3.      On or about May 11, 2022, Plaintiffs – by and through their counsel of record – served Defendant County of Los Angeles with a Tort Claim that substantially complied with California Government Code § 910 et seq. and was timely pursuant to Cal. Gov. Code § 911.2. On July 12, 2022, Defendant County of Los Angeles served Plaintiffs' counsel with a notice of rejection of the Tort Claim. Plaintiff thereafter timely filed this civil lawsuit in Los Angeles Superior Court on or about September 20, 2022 and has therefore substantially complied with the procedural requirements of the Tort Claims Act sufficient to assert any and all state law claims herein.

4.      On or about October 25, 2022, Defendant COUNTY OF LOS ANGELES removed this matter to the United States District Court for the Central District of California, which enjoys original jurisdiction with respect to Plaintiff's claims asserted under 42 U.S.C. § 1983 as well as concurrent jurisdiction of the remaining claims asserted under California law.

/ / /

/ / /

## **PARTIES**

5.      Plaintiff ALMA CERVANTES ("Plaintiff" or "Plaintiff CERVANTES") is an individual who at all relevant times was and is residing in the State of California, County of Los Angeles, and therefore enjoyed the protection of the laws of the State of California as well as the laws of the United States, including the protections afforded under the United States Constitution. Plaintiff CERVANTES is a female Latino of Mexican ancestry and her physical appearance presents as such.

6.      Defendant STEPHEN SAENZ ("Defendant SAENZ") is a male employee of Defendant COUNTY OF LOS ANGELES, who at all relevant times was acting in their individual capacity as an officer of the Los Angeles County Sheriff's Department, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant SAENZ was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

7.      Defendant JOHANA ESCALANTE ("Defendant ESCALANTE") is a female employee of Defendant COUNTY OF LOS ANGELES, who at all relevant times was acting in their individual capacity as an officer of the Los Angeles County Sheriff's Department, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant ESCALANTE was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

8.      Defendant VANESSA GUZMAN ("Defendant GUZMAN") is a female employee of Defendant COUNTY OF LOS ANGELES, who at all relevant times was acting in their individual capacity as an officer of the Los Angeles County Sheriff's Department, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant GUZMAN was acting in

their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

9.      Defendant STAVROS VITOGIANNIS ("Defendant VITOGIANNIS") is a male employee of Defendant COUNTY OF LOS ANGELES, who at all relevant times was acting in their individual capacity as an officer of the Los Angeles County Sheriff's Department, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant VITOGIANNIS was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department.

10.     Defendant COUNTY OF LOS ANGELES ("COLA") is a California governmental entity charged with and responsible for appointing, promoting, instructing, disciplining, and supervising its employees, including those employed by and through the Los Angeles County Sheriff's Department, and including in particular but not limited to Defendants SAENZ, ESCALANTE, GUZMAN, VITOGIANNIS and all DOE Defendants. At all times relevant, Defendant COLA had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, and the laws of the State of California.

11.     The unknown named defendants ("DOE" Defendants) 4 through 25 include, but are not limited to, unknown deputies, sergeants, lieutenants, and captains employed by Defendant COLA, by and through either the Los Angeles County Sheriff's Department ("LASD") or some other government agency, and either committed the misconduct and/or wrongful actions or otherwise acquiesced in the negligence or other misconduct described and attributed to the named defendants herein, resulting in

injury to Plaintiff's person, well-being and property as described in more detail below. Such unknown DOE Defendants may also include policymakers who created, fostered, acquiesced, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiff's constitutional rights and her injuries described herein.

12.     Plaintiff is ignorant of the true names and capacities of those named as DOE Defendants but will amend or otherwise update this Complaint upon receipt of information sufficient to identify any DOE Defendants by their true names.

13.     Defendants, and each of them, committed the acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

14.     Each and every defendant who is a natural person is sued in both their individual/personal capacity, as well as in their official capacity to the extent they had any policymaking responsibilities, supervisory duties, or other involvement sufficient to allow for claims against them in their official capacity under California or federal law.

15.     At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency as members of the Los Angeles County Sheriff's Department.

16.     Plaintiff was deprived of her interests protected by the Constitution and/or laws of the United States of America as well as the laws of the State of California and has suffered injuries to her person; each and every defendant caused, by commission or omission, such deprivations while acting under color of law as described herein.

## FACTS COMMON TO ALL CLAIMS

17.     Plaintiff brings this Complaint to seek redress and vindication of her rights under California law and the United States Constitution for the egregious misconduct of members of the Los Angeles County Sheriff's Department. As set forth in more

detail herein, Defendants aggressively detained Plaintiff and her husband as they were walking on a public street and accused them of car theft despite having video evidence in their possession that proved neither Plaintiff nor her husband had any connection to the alleged crime. Despite such evidence and knowledge – as well as Plaintiff's repeated offers to provide documentation proving she was engaged in lawful activity elsewhere at the time – Defendants wrongfully detained, search, and arrested Plaintiff. Throughout the ordeal, Defendants – including Defendant SAENZ in particular – subjected Plaintiff to numerous comments and accusations that made clear that Defendants viewed Plaintiff as a lesser person by virtue of her appearance and identity as a Latina woman of Mexican ancestry who had the unfortunate luck of being spotted walking down a public street in La Puente, California on a Tuesday morning.

18.    Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count of this Complaint.

19.    The INCIDENT is the series of events and circumstances that occurred on or about January 18, 2022 and thereafter, as described more fully in this pleading.

20.    At all relevant times, Plaintiff and her immediate family resided in La Puente, California.

21.    On the morning of January 18, 2022, Plaintiff and her husband – Steven Peraza – took their daughter's vehicle to a business specializing in automobile stereo systems to obtain a new speaker system in the vehicle. The business was and is *Car Audio Xperts*, which is located at or near 1057 North Hacienda Boulevard, in La Puente, California. Because they wished for the new speaker system to be a surprise, they did not arrange for their daughter to assist in picking them up, opting instead to walk back towards their residence.

22.    At approximately 9:21 a.m. that morning, Plaintiff and her husband left *Car Audio Xperts* on foot and began the approximate 20-minute walk home, which included walking northbound on the sidewalk along Amar Road.

23.     As Plaintiff and her husband came upon the intersection of Amar Road and Sandy Hook Avenue, Plaintiff noticed two sport utility vehicles ("SUVs") bearing the official markings of the Los Angeles County Sheriff's Department quickly pull up to the intersection. Female deputies employed by Defendant COLA exited from the vehicles – one appearing to be Latina, one appearing to be Caucasian, identified herein as Defendants GUZMAN and ESCALANTE, respectively – and ran up to Plaintiff and her husband.

24.     Defendants GUZMAN and ESCALANTE ordered Plaintiff and her husband to not move and to put their hands up. Without waiting for any response or providing any time to comply, Defendant GUZMAN then grabbed Plaintiff, forcibly pushed her up against one police vehicle and began searching Plaintiff's person. Defendant ESCALANTE did the same to Plaintiff's husband against the other police vehicle.

25.     While being forcibly searched, Plaintiff did not resist or attempt to obstruct Defendant GUZMAN's actions, but instead asked Defendant GUZMAN why she was detaining and searching her. Plaintiff stated words to the effect of: "Why are you doing this? We have done nothing wrong. We have a clean record." Plaintiff went on to state to Defendant GUZMAN that she and her husband had just come from an automobile stereo shop where they dropped off their daughter's vehicle, and that the receipt for the stereo purchase was in her purse as proof. Plaintiff also suggested that Defendant GUZMAN call *Car Audio Xperts* to confirm that they were customers that had just left the shop.

26.     Defendant GUZMAN responded that "detectives" would be arriving shortly to take over and asserted that Plaintiff and her husband were the "couple" that "stole a white Camry."

27.     Plaintiff responded incredulously, expressing shock and confusion as to why she and her husband were being accused of vehicle theft. Plaintiff again reiterated that they were walking home from a car audio shop and stated they had done nothing wrong.

28.     Defendant GUZMAN ignored Plaintiff's statements, handcuffed Plaintiff, and placed Plaintiff in the back seat of the police vehicle.

29.     In stopping Plaintiff and her husband, Defendants had conducted a detention of Plaintiff that – pursuant to the Fourth Amendment to the United States Constitution and related case law – required that Defendants have a reasonable suspicion that Plaintiff had committed or was in the process of committing a crime.

30.     At the time that Defendant GUZMAN handcuffed Plaintiff, neither Defendant GUZMAN nor any other member of the Los Angeles County Sheriff's Department possessed any evidence or information that would create a reasonable suspicion that Plaintiff or her husband had engaged in any criminal activity.

31.     The use of handcuffs during an investigative detention – as opposed to a formal arrest – requires reasonable suspicion that the individual poses an immediate physical threat and that handcuffing the individual is the least intrusive means to protect against that threat. (Se Terry v. Ohio, 392 U.S. 1 (1968).)

32.     At the time that Defendant GUZMAN handcuffed Plaintiff, neither Defendant GUZMAN nor any other member of the Los Angeles County Sheriff's Department had observed any events that could have supported a reasonable suspicion that Plaintiff was armed or otherwise posed an immediate physical danger to anyone. As such, both the detention and the use of handcuffs to restrain Plaintiff were not supported by the law and constituted a violation of Plaintiff's constitutional rights.

33.     In fact, during the course of the initial interaction with Defendants GUZMAN and ESCALANTE, Plaintiff promptly and calmly provided specific information regarding where Plaintiff and her husband had just come from and identified physical proof of the same in her possession, which constituted proof that neither Plaintiff nor her husband were involved in any automobile theft and there was no legitimate basis to continue detaining Plaintiff.

/ / /

/ / /

34.    Rather than conduct any good faith investigation, Defendants – including Defendant GUZMAN in particular – ignored the information and evidence offered by Plaintiff and continue the unlawful detention.

35.    Plaintiff continued to speak with Defendant GUZMAN from the back of the police vehicle, again explaining that she had committed no crime, was walking home with her husband from a specific business and had proof of the same in her purse. Defendant GUZMAN asserted that Defendants GUZMAN and ESCALANTE were "looking for a couple" and that "detectives" would arrive soon and identify Plaintiff and her husband as the individuals that committed automobile theft. As would soon become obvious, none of these representations were accurate or had any support.

36.    While waiting in the back of the vehicle, Plaintiff noticed that her husband was similarly detained in the back of the other police vehicle by Defendant ESCALANTE.

37.    Approximately twenty minutes later, Defendant SAENZ – along with at least one other officer later understood to be Defendant VITOGIANNIS – arrived at the scene where Plaintiff and her husband were being held.

38.    Defendant SAENZ walked up to the vehicle where Plaintiff was held and stated to Plaintiff that she was "going to straight to jail" because "you don't even have money for a lawyer."

39.    Plaintiff was shocked and embarrassed by Defendant SAENZ's comment. None of the officers present had asked Plaintiff to identify herself, checked her identification, or otherwise taken any reasonable steps to confirm Plaintiff's identity. Because Defendant SAENZ did not know who Plaintiff was, Defendant SAENZ was making assumptions based on Plaintiff's appearance, and his comment was reasonably understood by Plaintiff to be a racially charged accusation that, by virtue of her appearance as a Latina woman of Mexican ancestry, Plaintiff was not the type of person who could afford legal counsel. Defendant SAENZ's comment was objectively offensive, did not serve any rational investigative purpose, but instead appeared intentionally calculated to intimidate and belittle Plaintiff based on her ethnicity and

appearance. Plaintiff began to reasonably suspect that the reason she and her husband were detained was due in large part to their appearance and perceived ethnicity.

40.     In a desperate effort to avoid further humiliation and mistreatment by Defendant SAENZ and the other members of the Los Angeles County Sheriff's Department, Plaintiff begged Defendant SAENZ to look at the receipt in her purse, which would prove that they had just left *Car Audio Xperts* and were walking home.

41.     Defendant SAENZ responded by stating, "Yeah, right. You are going to jail. We have you *and* your husband on video stealing a car." This statement was objectively false, and Defendant SAENZ knew that the statement was false at the time he made it.

42.     At the same time, Plaintiff's husband continued to be detained in the other vehicle. Defendant VITOGIANNIS pointedly told Mr. Peraza that he was caught on video with Plaintiff stealing a vehicle.

43.     Knowing that was false by virtue of the fact that neither he nor Plaintiff had in fact stolen any vehicle, Mr. Peraza demanded that Defendants show him the supposed video of Plaintiff and himself stealing a car. Defendant SAENZ and Defendant VITOGIANNIS then spoke among each other briefly before conceding that the alleged video evidence actually showed a lone female individual stealing the car, not a "couple" as previously claimed by Defendants.

44.     While Plaintiff remained handcuffed in the other police vehicle, Defendant GUZMAN took Plaintiff's purse and dumped its contents on the hood of the vehicle. This included the keys to Mr. Peraza's Toyota Corolla, which was parked back at Plaintiff's residence. Defendant SAENZ then held the keys up and smiled at Plaintiff, appearing to believe he was holding proof of Plaintiff's guilt. Notably, despite Plaintiff's repeated statements regarding the receipt from *Car Audio Xperts*, Defendants ignored the receipt when it was displayed along with the other contents of Plaintiff's purse on the hood of the sheriff's department vehicle.

45.     Defendant GUZMAN asked Plaintiff if the car keys were hers. Plaintiff, who remained handcuffed in the back of the vehicle and did not have a clear line of sight to the keys being held by Defendant SAENZ, denied that they were her keys because Plaintiff does not drive a Toyota. This was an honest and accurate statement because they keys belonged to her husband, Steven Peraza, which he had placed in Plaintiff's purse earlier that morning before driving their daughter's vehicle to *Car Audio Xperts*. Plaintiff and her husband had in fact taken both his Corolla and their daughter's car to a car wash earlier that morning to have them cleaned, then placed the keys in Plaintiff's purse after dropping the Corolla off at their house before taking their daughter's car to *Car Audio Xperts* to purchase and install the stereo equipment.

46.     Defendant SAENZ loudly declared that Defendants were "taking the keys in as evidence."

47.     Mr. Peraza, who remained handcuffed in the back of the other police vehicle but who had a better view of the keys being held by Defendant SAENZ, shouted that they were his keys for his vehicle at home.

48.     Defendant SAENZ responded by falsely asserting that keys did not belong to Mr. Peraza and again falsely asserted that there was video evidence of Plaintiff driving a stolen car.

49.     Mr. Peraza responded that Defendant SAENZ was "making a big mistake" and reiterated that the keys belonged to him.

50.     For several minutes, Plaintiff continued to protest to the officers that she did not steal any vehicle and that she had a clean record. Defendant SAENZ responded, "Oh, yeah. Sure." And told Plaintiff to "be quiet."

51.     Defendants eventually released Mr. Peraza from their custody at the scene.

52.     Upon information and belief, Plaintiff understands that Defendant SAENZ was of higher rank and authority and therefore had supervisory control over the detention of Plaintiff and the actions of subordinate offers, including but not limited to Defendants GUZMAN, ESCALANTE, and VITOGIANNIS. Plaintiff therefore

understands that Defendant SAENZ made the decision that Plaintiff would be taken to jail, which constituted a decision to escalate the detention to a formal arrest.

53.    At the time that Plaintiff was placed under arrest and transported away from the intersection where Defendants initially detained her and her husband, there was no warrant for Plaintiff's arrest nor any probable cause to believe that Plaintiff had in fact committed any crime. The decision by Defendant SAENZ to arrest Plaintiff therefore plainly violated Plaintiff's constitutional rights.

54.    Defendant GUZMAN took Plaintiff to the City of Industry Station where Plaintiff was booked and processed.

55.    During the booking process, Plaintiff was not provided a mask or otherwise provided basic protections with respect to the ongoing COVID pandemic, which Plaintiff understands and asserts generally was in violation of the existing policy related to COVID safety in effect for the Los Angeles County Sheriff's Department.

56.    Later that day, Plaintiff was taken to a room and interrogated by Defendant SAENZ in the presence of one or more members of the Los Angeles County Sheriff's Department.

57.    During the interrogation, Defendant SAENZ repeatedly asked Plaintiff if she was "on drugs." Plaintiff, who had never abused illegal narcotics, assured Defendant SAENZ that she had a clean home life and employment and did not use drugs. Defendant SAENZ ignored this representation and repeated the question at various times during the interrogation. Plaintiff reasonably understood that Defendant SAENZ's baseless accusation of drug use – much like his accusation that she could not afford an attorney – was based on Defendant SAENZ's personal view of Plaintiff due to her appearance.

58.    During the interrogation, Defendant SAENZ asked Plaintiff if she would like immigration officials to know about her "criminal activities." Plaintiff was shocked and offended by Defendant SAENZ's threat to contact immigration authorities. Because members of the Los Angeles County Sheriff's Department do not have any

specific jurisdictional authority to enforce federal immigration law and are in fact barred from engaging in such activities pursuant to California law, Plaintiff reasonably understood that Defendant SAENZ was threatening Plaintiff with immigration consequences in the hope of frightening Plaintiff into admitting to a crime she did not commit. Plaintiff also reasonably understood Defendant SAENZ's comment to be a yet another reflection of how Defendant SAENZ viewed Plaintiff based solely on her appearance and ethnicity.

59.     Plaintiff responded that she was lawfully permitted to live and work in the United States as she had been for many years, and in fact had multiple family members that were United States citizens.

60.     Defendant SAENZ eventually terminated the interrogation after repeatedly accusing Plaintiff of drug use and threatening her with immigration consequences for no apparent reason other than perhaps a desperate attempt to get Plaintiff to spontaneously confess to a crime.

61.     Plaintiff was eventually released at approximately 6:00 p.m. that day and was given paperwork confirming that she had a criminal arraignment date for January 20, 2022, at 8:30 a.m. in the El Monte Courthouse. Plaintiff understood generally that this hearing was related to the false accusation that Plaintiff had stolen a car.

62.     As Plaintiff was released, she attempted to retrieve her husband's car keys but was told they could not be released because they were evidence of the auto theft for which Plaintiff was being charged.

63.     Plaintiff's husband and daughter picked her up and took her home from the police station.

64.     The following day, Plaintiff and her husband went back to the station to attempt to retrieve the car keys, as they could not both get to work or use Mr. Peraza's vehicle because they did not have a second set of car keys for Mr. Peraza's vehicle. Plaintiff also demanded to speak with Defendant SAENZ.

65.   A member of the Los Angeles County Sheriff's Department that identified himself as Detective Erik Coker met with Plaintiff and her husband and gave them back the car keys. Detective Coker explained that Defendant SAENZ was not actually a detective and was no longer assigned to the investigation.

66.   Plaintiff asked what would happen next and if she had to go to court the following day.

67.   Detective Coker suggested that Plaintiff "most likely" would not need to go to the court hearing identified in her release paperwork. Detective Coker went on to state that he had reviewed the video footage Defendant SAENZ and others claimed showed Plaintiff stealing a vehicle and suggested it "most likely is not you" but he would need to confirm by calling Plaintiff later that day.

68.   Plaintiff left the station in shock, angry and shaken that Defendants had detained her and her husband, repeatedly accused them of stealing a vehicle, interrogated her about her immigration status and potential drug use, and held her for the entire day when the video evidence they relied upon did not in fact show Plaintiff engaging in any criminal activity.

69.   Approximately an hour after she left the station, Plaintiff received a phone call from Detective Coker, wherein he represented that Plaintiff did not need to appear in Court the next day.

70.   During the same call, Detective Coker requested that Plaintiff return to the station to sign a document Detective Coker identified as a Certificate of Release.

71.   Plaintiff reluctantly returned to the station and was presented with a document entitled "Certificate of Release/Clearance Letter" which appeared to be a formal representation that a search was done to confirm that Plaintiff did not have any outstanding warrants against her. The document incorrectly stated that Plaintiff was released on January 19, 2022 at approximately 5:24pm, when in fact she was released the day before. The document also appeared to confirm that Plaintiff was released because there were insufficient grounds to charge Plaintiff with any crime.

72.     As a result of the conduct of Defendants – including but not limited to Defendant GUZMAN and Defendant SAENZ in particular – Plaintiff experienced and continues to experience severe mental distress and psychological trauma related to the events described herein.

73.     As a result of the conduct of Defendants, Plaintiff suffered physical injury in the form of pain to her wrists from the handcuffs Defendant GUZMAN applied to Plaintiff at the outset of the detention.

74.     The conduct of the Defendants as described herein represents a willful and conscious disregard for the constitutional rights of Plaintiff and a purposeful effort to infringe on the same. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## FIRST CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## FOURTH AMENDMENT – UNLAWFUL SEIZURE

### Against Defendants SAENZ, GUZMAN, ESCALANTE, and VITOGIANNIS

75.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

76.     At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from seizures under the Fourth Amendment was in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

77.    On or about January 18, 2022, Defendants GUZMAN and ESCALANTE were engaged in their professional duties as deputies of the Los Angeles County Sheriff's Department at or near the intersection of Amar Road and Sandy Hook Avenue in La Puente, California when they abruptly stopped and detained Plaintiff and her husband without explanation, including forcibly detaining and searching, and handcuffing them both. At no point did Defendants take any good faith efforts to identify Plaintiff or determine if there was a factual basis to suspect Plaintiff or her husband of committing a crime. Plaintiff – without resisting or impeding the actions of Defendants – questioned the basis for the detention and handcuffing and identified specific evidence in her possession that would support a determination that Plaintiff was not the perpetrator of any alleged car theft that morning because she had just left *Car Audio Xperts* after dropping of her daughter's vehicle for a stereo speaker installation. Defendants GUZMAN and ESCALANTE declined to verify Plaintiff's identity, review the receipt evidence in Plaintiff's possession, or otherwise take any reasonable investigative steps.

78.    When Defendants SAENZ, VITOGIANNIS, and other members of the Los Angeles County Sheriff's Department arrived at the scene approximately twenty minutes later, Defendants repeatedly claimed that Plaintiff and her husband were on caught on video stealing a car. Plaintiff's husband demanded to see the video, to which Defendants SAENZ and VITOGIANNIS then changed their position and began asserting that only Plaintiff was caught on video stealing a car. Defendants then examined the contents of Plaintiff's purse and seized upon the existence of car keys as proof of vehicular theft, all the while ignoring Plaintiff's identification and the receipt in her purse that confirmed Plaintiff's version of events, as well as ignoring her husband's repeated assertions that the keys belonged to him.

79.    At multiple times throughout the detention – including both during the initial stop by Defendants GUZMAN and ESCALANTE as well as the further "investigation" by Defendants SAENZ and VITOGIANNIS, Defendants knew or

should have known that they did not possess any information or evidence that would give rise to a reasonable suspicion that Plaintiff had committed a crime or was in the process of committing a crime. Moreover, throughout the encounter all Defendants knew or should have known that there was no factual basis to suspect Plaintiff of being dangerous to herself or any other person, which meant there was no lawful basis to handcuff Plaintiff, let alone keep her in handcuffs throughout the detention. Defendants therefore had a legal obligation to terminate the detention and release Plaintiff. Despite this legal obligation resulting from a lack of any legitimate criminal suspicion, Defendants not only continued the detention but exacerbated the same by repeatedly and falsely asserting that Plaintiff was caught on video stealing a car and that Plaintiff would go to jail because she could not afford an attorney.

80.    The actions of Defendants in detaining and continuing to detain Plaintiff therefore constituted a violation of her rights under the Fourth Amendment to the United States Constitution.

81.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which Plaintiff has sought and will continue to seek treatment.

82.    As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

83.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs, and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

84.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the treatment of private citizens under the law. Defendants' actions shock the conscience of the average person and constitute an abuse of power

that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## FOURTH AMENDMENT – UNLAWFUL ARREST
### Against Defendants SAENZ, GUZMAN, ESCALANTE, and VITOGIANNIS

85.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

86.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from warrantless arrests absent probable cause was in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

87.    As described elsewhere in this pleading, Defendants kept Plaintiff in custody – handcuffed in the back of a police vehicle – without reasonable suspicion of criminal conduct and despite Plaintiff repeatedly identifying evidence in her possession that would confirm that Plaintiff was not connected in any way to any alleged car theft. Defendants SAENZ, GUZMAN, ESCALANTE, and VITOGIANNIS ignored such evidence and instead escalated the encounter by converting Plaintiff's detention into a formal arrest.

88.    Defendants seized upon the existence of car keys in Plaintiff's purse as justification to escalate the detention to an arrest, even though Plaintiff's husband stated the car keys belonged to him and despite Defendants own knowledge that the video evidence purportedly in their possession did not show Plaintiff engaging in any criminal misconduct. At the time Defendants decided to arrest Plaintiff, they knew

that the mere existence of *Toyota* brand car keys which Plaintiff's husband honestly identified as his own did not constitute probable cause to arrest Plaintiff.

89.    At no time did Defendants possess a warrant or probable cause to believe that Plaintiff had committed a crime, nor did Defendants reasonably believe that they possessed sufficient probable cause to arrest Plaintiff. Defendants therefore intentionally arrested Plaintiff in violation of her rights under the Fourth Amendment to the United States Constitution.

90.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which she has sought and continues to seek treatment.

91.    As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

92.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, she is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

93.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the civil rights of Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### FOURTH AMENDMENT – RACIAL DISCRIMINATION
### Against Defendant SAENZ

94.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

95.     At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to equal protection and due process of law as well as the right to be free from discriminatory mistreatment under the law was in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

96.     On or about January 18, 2022, Defendant SAENZ was engaged in his professional duties as an officer of the Los Angeles County Sheriff's Department during the time in which Defendant SAENZ participated in the detention, arrest, and interrogation of Plaintiff as described elsewhere in this pleading.

97.     When Defendant SAENZ first arrived at the intersection of Amar Road and Sandy Hook Avenue in La Puente, California, he immediately asserted to Plaintiff that she would be going to jail and that her going to jail was, at least in part, because Defendant SAENZ presumed that Plaintiff could not afford an attorney. Defendant SAENZ's assertion that Plaintiff could not possibly afford an attorney was based solely on Defendant SAENZ's assumptions and attitude regarding Plaintiff, which was in turn based only on her physical appearance in his eyes – namely her appearance as a Latina woman of Mexican ancestry, which to Defendant SAENZ apparently justified accusing her of criminal conduct without evidence and mocking her based on his belief that Plaintiff could not afford an attorney.

98.     Thereafter, Defendant SAENZ interrogated Plaintiff at the City of Industry Station subsequent to her arrest. During the interrogation, Defendant SAENZ repeatedly and falsely accused Plaintiff of being "on drugs." Defendant SAENZ's accusations of drug use constituted a tired, lazy, and racially motivated stereotype against Plaintiff based on nothing more than her ethnicity and appearance.

99.     During the same interrogation, Defendant SAENZ mocked Plaintiff by asking if Plaintiff would like immigration officials to be informed of her nonexistent "criminal activities." This threat revealed Defendant SAENZ's racially charged assumption that Plaintiff was undocumented or otherwise had a reason to fear immigration consequences from her unlawful arrest. Given the status of sanctuary laws in effect in the State of California at the time – including in particular but not limited to the California Values Act – this threat did not serve any lawful or investigative purpose but instead was merely an example of Defendant SAENZ bullying Plaintiff about her ethnicity and appearance based on his own racial bias.

100.    Based on the racial animosity demonstrated by Defendant SAENZ's multiple statements to Plaintiff during her detention and subsequent post-arrest interrogation, Plaintiff alleges herein that Defendant SAENZ's actions were motivated by racial animus against Plaintiff in violation of Plaintiff's 14th Amendment right to equal treatment under the law.

101.    The actions of Defendant SAENZ violated Plaintiff's rights under 42 U.S.C. § 1981, which holds that all persons within the jurisdiction of the United States are entitled to the full and equal benefit of the laws that are enjoyed by white citizens, and which forbids intentional discrimination on account of race. (See 42 U.S.C. § 1981(a); see also Evans v. McKay, 869 F.2d 1341, 1343 (9th Cir. 1989); accord, Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1986).)

102.    As a direct and proximate result of Defendant SAENZ's actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

103.   As a direct and proximate result of Defendant SAENZ's actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered.

104.   Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

105.   The conduct of the Defendants as described herein represented a willful and conscious disregard for the civil rights of Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

### FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – *Monell*/Municipal Liability
### Against Defendant COUNTY OF LOS ANGELES

106.    Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

107.   Defendant COLA, by and through the individual policymakers and/or supervisory officials for the Los Angeles County Sheriff's Department, improperly, inadequately, or with deliberate indifference and/or reckless disregard for constitutional rights of persons, failed to properly train, supervise, retrain, monitor, or take corrective action with respect to individual employees under their supervision and control, including in particular but not necessarily limited to Defendants SAENZ, GUZMAN, ESCALANTE, VITOGIANNIS, and others with respect to the types of wrongful conduct alleged in this complaint, including, but not limited to the failure to enforce the law of the State of California, the unconstitutional enforcement of local

ordinances and statutes, the enforcement of unconstitutional ordinances and statutes, and misuse of actual or perceived authority against individuals such as Plaintiff such that each one of them is liable legally for all injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth in <u>Monell v. Dept. of Social Services of the City of New York</u>, 436 U.S. 658 (1978), <u>Heller v. Bushey</u>, 759 F.2d 1371 (9th Cir. 1986), cert. granted and reversed on other grounds sub nom. <u>City of Los Angeles v. Heller</u>, 106 S.Ct. 1573 (1986), and <u>Larez v. Gates</u>, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

108.   The following policies, customs, and practices of Defendant COLA were in effect at the time of the incidents described herein, which had the natural and foreseeable result of violating Plaintiff's established constitutional rights:

    a.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who detain private citizens without reasonable suspicion of criminal wrongdoing;

    b.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who conduct warrant-less arrests of private citizens without probable cause;

    c.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who make false statements regarding the existence of evidence in order to justify the detention and/or arrest of private citizens; and

    d.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who use their authority as law enforcement officers to antagonize individuals on the basis of their actual or perceived ethnicity and use the same as justification to detain individuals without reasonable suspicion.

    e.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who use their authority as law

enforcement officers to antagonize individuals on the basis of their actual or perceived ethnicity and use the same as justification to arrest individuals without a warrant or probable cause.

109. Defendant COLA, by and through the Los Angeles County Sheriff's Department, owed a duty to Plaintiff and others at all times to establish, implement, and follow policies, procedures, customs, and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, as well as related federal law; to use reasonable care to select, supervise, train, control, and review the actions of all of their agents, officers, and employees; and to ensure that its members engaged in the performance of their duties in conformity with the laws of the United States.

110. Instead, Defendants engaged in the above-described policies, practices, and customs, all of which is not unique to Plaintiff alone or constitutes an isolated incident, but is in fact a pervasive policy, practice, and custom of which Defendant COLA, by and through its various supervisors and policymakers, are aware and either expressly maintain or otherwise tacitly support through inaction.

111. The injuries suffered by Plaintiff as described herein were directly, proximately, and foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and unwritten, that at all relevant times were in full force and effect by Defendants and their employees, which were put in place or otherwise allowed to remain in place due to the tacit agreement of Defendants, various supervisors, managers, and policymakers, and was further exacerbated by their refusal to properly investigate such misconduct of other individuals under their supervision and authority, or discipline the same.

112. Defendant COLA, by and through its various supervisors and policymakers, knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiffs and others to suffer constitutional injury and be damaged by the wrongful acts and omissions as alleged herein, that such

breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

113.   The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiff herein.

### FIFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – UNLAWFUL SEIZURE Against Defendants SAENZ, GUZMAN, ESCALANTE, VITOGIANNIS, COUNTY OF LOS ANGELES, and DOES 4-25

114.   Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

115.   The California Constitution, Article I, § 13 contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from searches and seizures unsupported by either a warrant or probable cause.

116.   Plaintiff is a person who, at all times material, was legally entitled to the right to be free from unlawful seizures under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution.

117.   On or about January 18, 2022, Defendants GUZMAN and ESCALANTE were engaged in their professional duties as deputies of the Los Angeles County Sheriff's Department at or near the intersection of Amar Road and Sandy Hook Avenue in La Puente, California when they abruptly stopped and detained Plaintiff and her husband without explanation, including forcibly detaining and searching, and handcuffing them both. At no point did Defendants take any good faith efforts to identify Plaintiff or determine if there was a factual basis to suspect Plaintiff or her husband of committing

a crime. Plaintiff – without resisting or impeding the actions of Defendants – questioned the basis for the detention and handcuffing and identified specific evidence in her possession that would support a determination that Plaintiff was not perpetrator of any alleged car theft that morning because she had just left *Car Audio Xperts* after dropping of her daughter's vehicle for a stereo speaker installation. Defendant DOES 1 and 2 declined to verify Plaintiff's identity, review the receipt evidence in Plaintiff's possession, or otherwise take any reasonable investigative steps.

118.    When Defendants SAENZ, VITOGIANNIS, and other members of the Los Angeles County Sheriff's Department arrived at the scene approximately twenty minutes later, Defendants repeatedly claimed that Plaintiff and her husband were on caught on video stealing a car. Plaintiff's husband demanded to see the video, to which Defendants SAENZ and VITOGIANNIS then changed their position and began asserting that only Plaintiff was caught on video stealing a car. Defendants then examined the contents of Plaintiff's purse and seized upon the existence of car keys as proof of vehicular theft, all the while ignoring Plaintiff's identification and the receipt evidence in her purse that confirmed Plaintiff's version of events.

119.    At multiple times throughout the detention – including both during the initial stop by Defendants GUZMAN and ESCALANTE as well as the further "investigation" by Defendants SAENZ and VITOGIANNIS, Defendants knew or should have known that they did not possess any information or evidence that would give rise to a reasonable suspicion that Plaintiff had committed a crime or was in the process of committing a crime. Moreover, throughout the encounter all Defendants knew or should have known that there was no factual basis to suspect Plaintiff of being dangerous to herself or any other person, which meant there was no lawful basis to handcuff Plaintiff, let alone keep her in handcuffs throughout the detention. Defendants therefore had a legal obligation to terminate the detention and release Plaintiff. Despite this legal obligation resulting from a lack of any legitimate criminal suspicion, Defendants not only continued the detention but exacerbated the same by

repeatedly and falsely asserting that Plaintiff was caught on video stealing a car and that Plaintiff would go to jail because she could not afford an attorney.

120.    The actions of Defendants in detaining and continuing to detain Plaintiffs therefore constituted a violation of their rights under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution.

121.    The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

122.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which she continues to seek treatment.

123.   Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

124.   The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

125.   Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant

COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

## SIXTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – FALSE ARREST

## Against Defendants SAENZ, GUZMAN, ESCALANTE, VITOGIANNIS, COUNTY OF LOS ANGELES, and DOES 4-25

126.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

127.    The California Constitution, Article I, § 13 contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from searches and seizures unsupported by either a warrant or probable cause, including in particular seizure by way of arrest.

128.    Plaintiff is a person who, at all times material, was legally entitled to the right to be free from unlawful searches and seizures under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution, both of which include the right of a private citizen not to be subjected to unlawful arrest unsupported by probable cause or a valid warrant.

129.   As described elsewhere in this pleading, Defendants kept Plaintiff in custody – handcuffed in the back of a police vehicle – without reasonable suspicion of criminal conduct and despite Plaintiff repeatedly identifying evidence in her possession that would confirm that Plaintiff was not connected in any way to any alleged car theft. Defendants SAENZ, GUZMAN, ESCALANTE, and VITOGIANNIS ignored such evidence and instead escalated the encounter by converting Plaintiff's detention into a formal arrest.

130.   Defendants seized upon the existence of car keys in Plaintiff's purse as justification to escalate the detention to an arrest, even though Plaintiff's husband

stated the car keys belonged to him and despite Defendants own knowledge that the video evidence purportedly in their possession did not show Plaintiff engaging in any criminal misconduct. At the time Defendants decided to arrest Plaintiff, they knew that the mere existence of *Toyota* brand car keys which Plaintiff's husband honestly identified as his own did not constitute probable cause to arrest Plaintiff.

131.  At no time did Defendants possess a warrant or probable cause to believe that Plaintiff had committed a crime, nor did Defendants reasonably believe that they possessed sufficient probable cause to arrest Plaintiff. Defendants therefore intentionally arrested Plaintiff in violation of her rights under the Fourth Amendment to the United States Constitution and Article 1, § 13 of the California Constitution.

132.  The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

133.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which she continues to seek treatment.

134.  As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will reasonably be incurred into the future with respect to medical treatment for such injuries.

135.  Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs, and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

136.  The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiff. Defendants' actions shock the conscience of

the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

137.    Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – RACIAL DISCRIMINATION/PROFILING

### Against Defendants SAENZ, COUNTY OF LOS ANGELES, and DOES 4-25

138.    Plaintiff re-alleges, adopts, and incorporates the preceding paragraphs as if fully set forth herein.

139.    The California Constitution, Article I, § 7 holds that a person may not be deprived of equal protection of the laws, with express language finding that the section shall track the scope of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

140.    California Penal Code § 13519.4 is a provision relating to the Commission on Peace Officer Standards and Training (set forth in Cal. Pen. Code § 13500, *et seq*.), and specifically holds that racial profiling "presents a great danger to the fundamental principles of [the California] Constitution and a democratic society." The California Legislature considers racial profiling to be "abhorrent and cannot be tolerated." Police officers in California "shall not engage in racial or identity profiling." (See Cal. Pen. Code § 13519.4(d)-(f).)

141.    Plaintiff is a person who, at all times material, was legally entitled to the right to be free from unlawful racial discrimination by law enforcement officers in California, including in particular by way of suspicion-less detention, searches, arrest, or harassment based on her appearance as a member of an ethnic and/or racial group.

142.    On or about January 18, 2022, Defendant SAENZ was engaged in his professional duties as an officer of the Los Angeles County Sheriff's Department during the time in which Defendant SAENZ participated in the detention, arrest, and interrogation of Plaintiff as described elsewhere in this pleading.

143.    When Defendant SAENZ first arrived at the intersection of Amar Road and Sandy Hook Avenue in La Puente, California, he immediately asserted to Plaintiff that she would be going to jail and that her going to jail was, at least in part, because Defendant SAENZ presumed that Plaintiff could not afford an attorney. Defendant SAENZ's assertion that Plaintiff could not possibly afford an attorney was based solely on Defendant SAENZ's assumptions and attitude regarding Plaintiff, which was in turn based only on her physical appearance in his eyes – namely her appearance as a Latina woman of Mexican ancestry, which to Defendant SAENZ apparently justified accusing her of criminal conduct without evidence and mocking her for his belief that Plaintiff could not afford an attorney.

144.    Thereafter, Defendant SAENZ interrogated Plaintiff at the City of Industry Station subsequent to her arrest. During the interrogation, Defendant SAENZ repeatedly and falsely accused Plaintiff of being "on drugs." Defendant SAENZ's accusations of drug use constituted a tired, lazy, and racially motivated stereotype against Plaintiff based on nothing more than her ethnicity and appearance.

145.    During the same interrogation, Defendant SAENZ mocked Plaintiff by asking if Plaintiff would like immigration officials to be informed of her nonexistent "criminal activities." This threat revealed Defendant SAENZ's racially charged assumption that Plaintiff was undocumented or otherwise had a reason to fear immigration consequences from her unlawful arrest. Given the status of sanctuary laws in effect in

the State of California at the time – including in particular but not limited to the California Values Act – this threat did not serve any lawful or investigative purpose but instead was merely an example of Defendant SAENZ bullying Plaintiff about her ethnicity and appearance based on his own racial bias.

146.   Based on the racial animosity demonstrated by Defendant SAENZ's multiple statements to Plaintiff during her detention and subsequent post-arrest interrogation, Plaintiff alleges herein that Defendant SAENZ's actions were motivated by racial animus against Plaintiff in violation of Plaintiff's 14th Amendment right to equal treatment under the law.

147.   The actions of Defendant SAENZ violated Plaintiff's rights under 42 U.S.C. § 1981, which holds that all persons within the jurisdiction of the United States are entitled to the full and equal benefit of the laws that are enjoyed by white citizens, and which forbids intentional discrimination on account of race. (See 42 U.S.C. § 1981(a); see also Evans v. McKay, 869 F.2d 1341, 1343 (9th Cir. 1989); accord, Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1986).)

148.   The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

149.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which she continues to seek treatment.

150.   As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages in the form of reasonably necessary costs for medical care that Plaintiff has incurred and will continue to incur.

151.   Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes,

Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

152.   The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

153.   Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays and seeks the following relief as to the Causes of Action stated above:

1.  For economic damages according to proof at trial, including in particular costs associated with medical and/or psychological treatment;
2.  For general damages according to proof at trial, including pain, suffering, and loss of enjoyment of life;
3.  For punitive damages according to proof at trial, to the extent authorized or otherwise allowed by law;
4.  For reasonable attorney's fees and costs, pursuant to statute; and
4.  For such other relief as the Court deems proper and just.

Date: November 30, 2022

**WINDSOR TROY**

BY: _____

Daniel C. Sharpe, Esq.

## DEMAND FOR JURY TRIAL

Plaintiff Alma Cervantes hereby demands a trial by jury on all causes of action asserted herein.

Date: November 30, 2022

**WINDSOR TROY**

BY: _____

Daniel C. Sharpe, Esq.